People of the State of Illinois, Plaintiff-Appellee, v. Albert Gammons, Defendant-Appellant.

Gen. No. 53,281.

First District, Third Division.

October 1, 1970.

Gerald W. Getty, Public Defender of Cook County, of Chicago (George L. Lincoln and James J. Doherty, Assistant Public Defenders, of counsel), for defendant-appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Michael J. Goldstein, Assistant State's Attorneys, of counsel), for plaintiff-appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

In a jury trial the defendant was convicted of murder and sentenced to the Illinois State Penitentiary for a term of twenty to forty years. On appeal, defendant contends that the trial court erred (1) in admitting evidence that the victim was mentally retarded, (2) in admitting testimony on direct examination that a wit-

ness was afraid, both for herself and her family, to testify on behalf of the State, and (3) in sentencing him to the penitentiary rather than committing him to the custody of the Illinois Youth Commission. Since the defendant does not challenge the sufficiency of the evidence presented by the State, a detailed factual summary is not necessary for the disposition of the issues raised on this appeal.

At approximately 6:30 p. m. on November 24, 1967, Sherman Buckley was walking south on Calumet Avenue toward 49th Street in the City of Chicago. He was stopped by the defendant and one Robert Lee Brazelton. The defendant asked Buckley whether he was a "D," meaning Disciple, the name of a neighborhood youth gang. Buckley, who appeared to be frightened, did not respond and was, thereupon, hit and repeatedly kicked by the defendant and Brazelton. When the attacks ceased a few minutes later, Buckley was lying on the ground and his assailants rose and walked to the corner of 49th Street and Calumet Avenue. Shortly after that, Buckley rose and in a bent over position as if injured, ran across Calumet Avenue and turned the corner at 49th Street. Two eyewitnesses to the attack testified that when they arrived at the corner, they observed the defendant wiping the blade of a kitchen knife with a brown paper bag. One witness said she heard the defendant boast, "I stabbed him about seven or eight times." Buckley suffered seven stab wounds in the chest and back and died a short time later at Provident Hospital. We proceed to consideration of defendant's first point.

Defendant contends it was error for the State to introduce evidence of the victim's mental retardation. The fact that he was retarded explains his remaining mute and confirms the description of his conduct when he was asked by the defendant whether he was a "D." As the State contends, it also establishes the identity of the deceased. It was competent on those grounds, but if we assume the evidence was irrelevant, it does not follow that the judgment of conviction must be reversed and a new trial ordered.

■■ The seriousness of any trial error must be considered in relation to the facts of each individual case to determine whether a new trial is warranted. People v. Greeley, 14 Ill2d 428, 152 NE2d 825. It has been repeatedly held that a judgment of conviction need not be reversed because error has been committed unless it appears that real justice has been denied or that the verdict of the jury may have resulted from such error. People v. Tranowski, 20 Ill2d 11, 169 NE2d 347; People v. Bridges, 28 Ill2d 165, 190 NE2d 719. The defendant's guilt was established beyond all reasonable doubt without regard to the evidence complained of and under such circumstances the court will not reverse even if it finds the evidence was erroneously admitted. People v. McCasle, 35 Ill2d 552, 221 NE2d 227; People v. Berry, 18 Ill2d 453, 165 NE2d 257; People v. Ashley, 18 Ill2d 272, 164 NE2d 70; People v. Burger, 259 Ill 284, 102 NE 751.

■■ Defendant contends that the trial court erred in permitting the State to elicit testimony during the direct examination of an eyewitness that she gave a false statement to the police because of the fear of possible reprisals from the defendant or his gang. During cross-examination of the same witness, however, the defense brought out details of the earlier statement and thoroughly questioned the witness with respect thereto. A witness is entitled to an opportunity to explain a prior inconsistent statement and show the circumstances under which it was made. People v. Hicks, 28 Ill2d 457, 192 NE2d 891; People v. Izzo, 14 Ill2d 203, 151 NE2d 329; People v. Bibbs, 115 Ill App2d 200, 253 NE2d 179; People v. De Marco, 44 Ill App2d 459, 195 NE2d 213. While we have previously noted that the appropriate place for such an explanation is on redirect examination after the prior statement has been used for impeachment (People v. De Marco, supra), we can discern no prejudice resulting to the accused from the deviation from that order of proof in the instant case.

■ Defendant contends finally that he was only sixteen years old at the time the crime was committed and

while he was seventeen at the time of sentencing, he should not have been sentenced to the penitentiary, but should have been committed to the custody of the Illinois Youth Commission. The statute (Ill Rev Stats, c 38, § 119-2 (1967)) provides in pertinent part:

> "(a) All male persons *17 years of age or over* sentenced to a term of imprisonment in a penitentiary shall be sentenced to and confined in the Illinois State Penitentiary. [Emphasis added.]

> "(b) All male persons under 17 . . . sentenced to imprisonment shall be committed to the Illinois Youth Commission. . . ."

It is undisputed that defendant was seventeen years old at the time of his trial and sentencing. The plain import of the statute hereinbefore set forth is that the age of a defendant at the time he is to be incarcerated determines whether he should be committed to the Commission. The comments which accompany the statute reinforce this construction. They state that when a youth reaches the age of seventeen, he may be transferred to the penitentiary. Considering the amount of time which often elapses between the commission of a crime and the ultimate apprehension of the criminal, it is obvious that the intention was to have the age of the offender at the time of sentencing determine the place of confinement.

We find no reversible error in the record and the judgment is accordingly affirmed.

Judgment affirmed.

DEMPSEY, P. J. and McNAMARA, J., concur.